# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

No. 5:10-CV-00414-FL

| | |
|---|---|
| LINDA K. HUGGINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM AND |
| v. | ) RECOMMENDATION |
| | ) |
| N.C. DEPT. OF ADMINISTRATION, | ) |
| N.C. HUMAN RELATIONS COMMISSION, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the motion for summary judgment of Defendant North Carolina Department of Administration ("NCDOA"), North Carolina Human Relations Commission ("HRC"). [DE-112]. Plaintiff Linda K. Huggins filed a response in opposition to the motion [DE-114], and Defendant filed a reply [DE-121]; accordingly, the matter is ripe for disposition. The parties have not consented to jurisdiction of the magistrate judge; therefore, the motion is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons stated below, it is recommended that Defendant's motion for summary judgment be allowed.

## I. BACKGROUND

On October 7, 2010, proceeding *pro se* and *in forma pauperis*, Plaintiff filed her complaint alleging discrimination based on race, sex, religion and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* [DE-4]. On November 5, 2010, Defendant filed a Rule 12(b) motion to dismiss for insufficient service of process and failure to state a claim upon which relief can be granted. [DE-9]. On November 29, 2010, Plaintiff filed a motion

for leave to amend her complaint to add several individual defendants, claims of discrimination in violation of North Carolina state law and for emotional distress, and a request for punitive damages. [DE-16]. On September 2, 2011, the Court denied the motion to dismiss for insufficient service of process, dismissed Plaintiff's race discrimination claim for failure to exhaust her administrative remedies and denied Plaintiff's motion to amend, leaving Plaintiff's claims of retaliation and discrimination based on sex and religion pursuant to Title VII as the sole remaining claims. *See Huggins v. N.C. Dep't of Admin.*, No. 5:10-cv-414-FL, 2011 WL 3917372 (E.D.N.C. Sept. 2, 2011) [DE-60]. On June 15, 2012 and July 10, 2012, counsel entered appearances on Plaintiff's behalf. [DE-94, 100]. On January 18, 2013, Defendant filed the instant motion for summary judgment on all claims [DE-112], to which Plaintiff filed a response in opposition [DE-114], and Defendant filed a reply [DE-121].

Plaintiff was employed by the HRC from May 2004, until she was terminated on January 30, 2009. Plaintiff initially reported directly to interim director Sherri Brooks ("Brooks") until May 2005, when George Allison became the director of the HRC. Dep. of George Allison ("Allison Dep.")[1] 14:19-24; Dep. of Linda Huggins ("Huggins Dep.")[2] 49:22-24. Thereafter, Plaintiff reported directly to Allison. Huggins Dep. at 49:17-19. Plaintiff provided administrative support for the HRC staff, the public, and other entities, which included maintaining a database, preparing 30-day letters, and receptionist duties such as greeting visitors and answering the telephone. *Id.* 34:16-24. Other HRC employees, including Valerie Branch ("Branch"), were required to provide back-up to

---

[1] Excerpts from the deposition of George Allison can be found at Docket Entry numbers 113-2, 117 to 117-6, and 118 to 118-3.

[2] Excerpts from the deposition of Linda Huggins can be found at Docket Entry numbers 113-1 and 114 to 116-5.

2

Plaintiff and answer the phone when Plaintiff was away from her desk, which was the source of some conflict, as Plaintiff believed Branch did not to do so. *Id.*

Plaintiff received interim and annual performance evaluations, first from Brooks and then from Allison. *See* Pl.'s Evals. [DE-113-1] at 71-111. Plaintiff's evaluations from Brooks were largely positive with some constructive criticism. *See* June 22, 2004 Eval. [DE-131-1] at 71-77. Plaintiff's first two evaluations from Allison in 2006 and 2007 were also largely positive. *See* Aug. 25, 2006 Eval. [DE-131-1] at 81-88; June 14, 2007 Eval. [DE-131-1] at 91-99. Plaintiff's November 2007 interim evaluation from Allison rated her performance as "Below Good," but Plaintiff's annual evaluation from Allison for that period was increased to "Very Good" after Plaintiff showed improvement. *See* Huggins Dep. 67:7-12; May 30, 2008 Eval. [DE-113-1] at 102-108. Plaintiff requested written explanations regarding the negative comments in her evaluations from Allison, which she did not receive. Huggins Dep. 152:18-154:14; Sept. 11, 2006 Letter from Pl. to Allison [DE-117-5] at 13.

In May 2006, Plaintiff requested leave from Allison for a doctor's appointment. Huggins Dep. 53:23-25, 59:13-22. Plaintiff was required to explain to Allison why she was requesting leave, while other employees did not have to explain their reasons for requesting leave. *Id.* 55:22-56:11. Plaintiff claims that she informed Allison she had a doctor's appointment and that he asked her inappropriate questions regarding the scope of the appointment, including questioning her need for a mammogram and commenting on the appearance of her breasts. *Id.* 53:18-54:20. Plaintiff thereafter, sometime between May 2006 and August 25, 2006, filed her first of multiple complaints against Allison. *Id.* 52:8-53:1, 75:3-8. *See also* Allison Dep. 26:8-20. Plaintiff also wrote numerous letters complaining of Allison to government officials, including then Governors Beverly Purdue and

3

Mike Easley, President Barack Obama, and Senators Richard Burr and Kay Hagan. *See* Huggins Dep. 146:23-147:13, 150:12-151:12, 163:19-164:9; Pl.'s Ex. 4 [120-1]. Plaintiff also filed a complaint against Richard Boulden ("Boulden"), HRC General Counsel, for taking a cooler mug from her desk. Huggins Dep. 84:15-85:23. Plaintiff alleged that Boulden was stalking her at work by lurking around her desk at the direction of Allison, but she did not file a complaint regarding the alleged stalking. *Id.*

On October 10, 2006, Allison sent an email to Plaintiff regarding her interactions with co-workers with respect to 30-day letters.[3] *See* Oct. 10, 2006 Email from Allison to Pl. [DE-113-1] at 120. On October 19, 2006, Plaintiff received a written counseling letter for sending challenging, unnecessary, and disrespectful e-mails regarding agency procedure pertaining to sending 30-day letters to clients. *See* Oct. 19, 2006 Counseling Mem. [DE-113-1] at 112.

Plaintiff requested use of her vacation time to attend Jehovah's Witness conventions on several occasions. Allison Dep. 69:18-70:1. On March 8, 2006, Huggins requested days off in March, June, and July of the same year, specifically to attend Jehovah's Witness conventions in June and July, and her request was granted. *See* Mar. 8, 2006 Email from Allison to Pl. [DE-113-4]. In August 2006, Huggins requested vacation time off during November and December of the same year to attend a Jehovah's Witness convention with her family in Tennessee. Huggins Dep. 133:24-134:3. Plaintiff claims that Allison told her vacation requests during the holidays should be reserved for people who celebrate the holidays, that Jehovah's Witnesses do not, and that he was going to

---

[3] Plaintiff was required to prepare what were known as "30-day letters," which were sent to parties in housing discrimination cases. *See* Allison Dep. 29:12-22. In order to prepare the letters, Plaintiff relied on information provided by housing investigators at HRC. Once Plaintiff received this information, she prepared the letters and submitted them, no later than the twentieth of the month, for review by Maggie Faulcon, a housing supervisor. Huggins Dep. 79:15-18, 92:21-25.

4

reserve those vacation days for employees he knew celebrated the holidays. *Id.* 133:14-134:22. Millie Hershner ("Hershner"), a former HRC attorney, recalled Plaintiff being concerned about Allison's alleged comments regarding Jehovah's Witnesses and holidays, but Hershner was not aware of any other allegedly discriminatory acts at HRC. *See* Dep. of Mildred Hershner ("Hershner Dep.") [DE-118-4] 25:1-23. Allison ultimately granted Plaintiff's request for leave, three days before the requested period of leave, which created a financial hardship for Huggins in making travel arrangements. Huggins Dep. 134:7-22.

In June 2007, Plaintiff requested time off to attend a Jehovah's Witness convention on July 13 and 16, August 3, and August 15 through 17, 2007. *See* June 20, 2007 E-mail from Allison to Pl. [DE-115-5] at 4. Allison denied the request with respect to the July dates, citing the need for staff attendance due to the fact that HRC was relocating its office, and approved the request with respect to the August dates. *Id.* When Plaintiff questioned why other employees were allowed to take time off in July, Allison responded that they had submitted requests timely, and that Plaintiff had not. *See* July 12, 2007 E-mail from Allison to Pl. [DE-115-5] at 5. Plaintiff also requested leave to attend a Jehovah's Witness convention in August 2008, which she claims was denied by Allison. Huggins Dep. 131:20-25.

On May 30, 2007, Plaintiff received a written warning for unacceptable personal conduct regarding her extended absence from the office April 20, 2007, without permission and proper notice. *Id.* 78:8-14. Plaintiff had mechanical problems with her car, and informed Branch (in person) and Boulden (by leaving a note) that she was leaving, *id.* 79:19-23, and attempted to inform Allison by leaving a voice mail, *id.* 80:24-81:2. Plaintiff stated she would be back shortly and returned one hour and a half to one hour and forty-five minutes later. *Id.* 80:20-81:5. Plaintiff was

5

initially suspended by Boulden in relation to this incident, but the suspension was reversed and she lost no pay. *Id.* 190:21-191:8. Plaintiff claims the suspension was in retaliation for filing a complaint against Boulden with Allison. *Id.* 86:15-87:19.

On June 12, 2007, Plaintiff filed a written complaint with Human Resources against Allison. *See* June 12, 2007 Letter [DE-120-1] at 1-3. Plaintiff received two written warnings on July 27, 2007. *Id.* 90:15-17, 97:1-4. The first warning was based on unsatisfactory job performance in relation to 30-day letters Plaintiff sent to clients on behalf of HRC, *see* July 27, 2007 Written Warning [DE-113-1] at 117, and the second warning was for Plaintiff returning twenty minutes late to her desk after her lunch break, thereby leaving the phones and reception area unattended during a time when HRC committee members were arriving, *see* July 27, 2007 Written Warning [DE-113-1] at 118. Huggins notified her backup co-workers by email that she went to lunch late and would return from lunch late due to having to wait with an office visitor during the first minutes of her lunch break. Huggins Dep. 98:12-99:6.

On November 2, 2007, at the conclusion of a meeting between Plaintiff and Allison, Plaintiff claimed that Allison closed the door and blocked the exit, badgered her, and then assigned her a significant amount of work, which she considered to be a form of harassment. *See* Pl.'s May 14, 2008 EEOC Charge [DE-115-5] at 16-18. Plaintiff later claimed that during this meeting, and on numerous other occasions, Allison rubbed the front of his body against hers, touching her breasts. Huggins Dep. 258:20-261:10. On December 3, 2007, Plaintiff complained about Allison to Britt Cobb ("Cobb"), Secretary of the NCDOA, and on December 20, 2007, Plaintiff sent letters to then Governor Easley and Cobb regarding Allison's conduct; the letters did not reference any physical contact, although Plaintiff contends it was reported. *See* Dec. 7, 2007 Letter to Cobb [DE-117-5]

6

at 27-28; Dec. 20, 2007 Letter to Easley [DE-113-1] at 127-28; Dec. 20, 2007 Letter to Cobb [DE-113-1] at 129.

On March 18, 2008, Plaintiff mailed a written complaint regarding Allison to Human Resources. *See* Mar. 18, 2008 Letter [DE-120-1] at 36-38. On May 14, 2008, Plaintiff filed an EEOC charge alleging retaliation and discrimination on the basis of sex and religion based on the conduct of Allison. *See* May 14, 2008 EEOC Charge [DE-113-1] at 130. Also in May 2008, Plaintiff filed a complaint for discrimination on the basis of religion and sex with the Office of Administrative Hearings. *See* May 2008 Petition for Hr'g [DE-120-1] at 39. On July 23, 2008, Plaintiff filed a police report alleging that she received threatening phone calls at her home and that she believed the calls were made by Allison. *See* Police Report [DE-113-1] at 133; Huggins Dep. 171:22-172:5.

On December 19, 2008, Plaintiff was placed on investigatory leave, after she exhibited what Allison characterized as "an increased pattern of irrational and harassing behaviors," allegedly becoming confrontational with her co-workers and culminating in Plaintiff telling Boulden, "Don't be an a[]hole" and referring to him as a "freaking moron" in his presence. *See* Dec. 19, 2008 Mem. [DE-120-2]. Plaintiff now denies the conduct, but declined to discuss the matter with Allison at the time and was referred for an Employee Assistance Program assessment, which revealed no justification to excuse Plaintiff's conduct. *See* Huggins Dep. 182:14-29; Jan. 29, 2009 Letter [DE-115-5] at 20-22. After further investigation, on January 29, 2009, Plaintiff was notified that her employment would be terminated on January 30, 2009, for "unacceptable personal conduct, specifically conduct unbecoming a State employee that is detrimental to State service, insubordination, and conduct for which no reasonable person should expect to receive prior

7

warning." Jan. 29, 2009 Letter. On March 5, 2009, Plaintiff filed a second EEOC charge alleging retaliation and discrimination on the basis of religion and sex. [DE-18-1]. On July 9, 2010, Plaintiff received a right to sue letter from the EEOC regarding both her EEOC charges. [DE-1-5].

## II. STANDARD OF REVIEW

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates "that there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the moving party has carried its burden under Rule 56, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations & footnote omitted) (quoting Fed. R. Civ. P. 56). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

Plaintiff asserts against her former employer claims under Title VII for sexual harassment, religious discrimination, and retaliation. *See* Compl. ¶ 4. Defendant contends that Plaintiff has failed to establish a case of discrimination or retaliation under Title VII or, alternatively, that

8

Plaintiff's claims are time-barred and that Defendant is entitled to judgment as a matter of law. Def.'s Mem. [DE-113] at 14-23.

Title VII prohibits discrimination by an employer on the basis of an employee's race, color, religion, sex, or national origin with respect to the terms and conditions of employment. *See* 42 U.S.C. § 2000e–2(a). Title VII further prohibits retaliation by an employer because the employee has opposed discrimination made unlawful by Title VII. *See id.* § 2000e–3(a). Where, as here, a plaintiff lacks direct evidence of discrimination, she may rely on the *McDonnell Douglas Corp. v. Green* burden-shifting framework. 411 U.S. 792 (1973); *see Lettieri v. Equant Inc.*, 478 F.3d 640, 649–50 (4th Cir. 2007) (applying *McDonnell Douglas* framework to a Title VII retaliation claim); *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011) (applying *McDonnell Douglas* framework to a Title VII religious discrimination claim); *Kaszynski v. Thompson*, 83 F. App'x 526, 528 (4th Cir. 2003) (applying *McDonnell Douglas* framework to a Title VII hostile work environment claim based on gender).

To satisfy the *McDonnell Douglas* test, a plaintiff must put forward sufficient evidence to establish a *prima facie* case of discrimination or retaliation. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). "If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* "Assuming the employer meets this burden of production, . . . the burden shifts back to plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination [or retaliation].'" *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

9

## A. Sexual Harassment

To establish a Title VII claim for sexual harassment in the workplace, a plaintiff must show "that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (citation omitted).

Plaintiff alleges in her complaint that she was subjected to workplace harassment and a hostile work environment, including verbal assaults, threats of termination, and vulgar messages left on her home telephone. Compl. ¶¶ 4, 9. In Plaintiff's May 14, 2008 EEOC charge, she alleges that Allison repeatedly harassed her, citing specifically a November 2, 2007 meeting between Plaintiff and Allison during which she claims that Allison blocked the door so that she could not leave, badgered her, and then assigned her a significant amount of work, which she considered to be a form of harassment. *See* May 14, 2008 EEOC Charge. Plaintiff later claimed that during the November 2, 2007 meeting, and on numerous other occasions, Allison rubbed the front of his body against hers, touching her breasts, and that he asked her inappropriate questions regarding her need for a mammogram and commented on her breasts when she requested time off for a doctor's appointment. Huggins Dep. 53:23-55:17, 258:20-261:10.

Defendant contends, in the memorandum in support of its motion for summary judgment, that (1) Plaintiff has failed to show that the subject conduct is imputable to the employer and, thus, cannot state a *prima facie* case for sexual harassment; and that (2) Plaintiff's claim is time-barred. Def.'s Mem. at 14-17, 22-23. Plaintiff, in her response to Defendant's motion for summary judgment, expressly declined to put forth argument in opposition to Defendant's contentions, other

10

than to highlight Allison's alleged comments regarding Plaintiff's breasts and mammogram procedure and that Allison allegedly refused to let Plaintiff leave a meeting and, in doing so, rubbed his body against Plaintiff's breasts. Pl.'s Resp. [DE-114] at 27. In its reply, Defendant counters that the conduct asserted in Plaintiff's response is not sufficiently severe or pervasive to alter the terms and conditions of employment. Def.'s Reply [DE-121] at 1-3.[4]

## 1.    Conduct Imputable to the Employer

Defendant first contends that the alleged conduct is not imputable, because Defendant did not have notice of the alleged sexual harassment prior to Plaintiff's dismissal. Def.'s Mem. at 14-17. Plaintiff does not address this contention in the response to Defendant's motion. Pl.'s Resp. at 27. However, "even when the adverse party fails to respond to the motion for summary judgment, the court must review the motion and the materials before the court to determine if the moving party is entitled to summary judgment as a matter of law." *Meyer v. Qualex, Inc.*, 388 F. Supp. 2d 630, 634

---

[4] It is noteworthy that Plaintiff's sexual harassment claim appears to suffer from a terminal defect in that it exceeds the scope of Plaintiff's EEOC charge. This issue was not raised by Defendant in the instant motion for summary judgment or in the prior motion to dismiss. *See Huggins*, 2011 WL 3917372, at *3-4 (discussing failure to exhaust with respect to race discrimination claim). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (internal citations omitted). "Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Id.* (citation omitted).

Plaintiff's EEOC charges indicate that they were filed on the basis of, among other things, sex discrimination, but include no factual assertions that could be construed as sexual harassment, *e.g.,* sexually charged comments, sexual advances, physical touching, or otherwise offensive conduct of a sexual nature. *See* May 14, 2008 EEOC Charge and March 5, 2009 EEOC charge. The Fourth Circuit has made clear that "factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). Here, Plaintiff's allegations of sexual harassment are not reflected in her EEOC charges and a reasonable investigation of Plaintiff's EEOC charges of sex discrimination would not have included a sexual harassment claim. *See, e.g., Logan v. Colonial Williamsburg Hotel Properties, Inc.*, 941 F. Supp. 60, 62 (E.D. Va. 1996) (dismissing sexual harassment/hostile work environment claim where the EEOC charge alleged only race, sex, and retaliation discrimination and there were no allegations notifying the EEOC of plaintiff's sexual harassment claim). Therefore, Plaintiff's failure to exhaust administrative remedies with respect to the sexual harassment claim provides an alternative basis, in addition to those discussed *infra*, for granting summary judgment to Defendant on this claim.

11

(E.D.N.C. 2005).

As an initial matter, Defendant has incorrectly stated the applicable standard for determining

whether the alleged conduct is imputable to Defendant, by applying the standard for harassment by

a co-worker as opposed to a supervisor. The Fourth Circuit has explained the law with respect to

the fourth element of a sexual harassment claim as follows:

> In a case where an employee is sexually harassed by a coworker, the employer may
> be liable in negligence if it knew or should have known about the harassment and
> failed to take effective action to stop it. [*Spicer v. Commonwealth of Va., Dep't of
> Corr.*, 66 F.3d 705, 710 (4th Cir. 1995)]; *see also Burlington Indus., Inc. v. Ellerth*,
> 524 U.S. 742, 759, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (noting that
> "[n]egligence sets a minimum standard for employer liability under Title VII"). In
> a case of harassment by a supervisor "with immediate (or successively higher)
> authority over the employee," an employer may be found vicariously liable under the
> standards established in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. at 765, 118
> S. Ct. 2257, and *Faragher v. City of Boca Raton*, 524 U.S. [775,] 807-08, 118 S. Ct.
> 2275.

*Ocheltree*, 335 F.3d at 333-34. In *Burlington Industries* and *Faragher*, the Supreme Court held as

follows with respect to harassment by a supervisor:

> An employer is subject to vicarious liability to a victimized employee for an
> actionable hostile environment created by a supervisor with immediate (or
> successively higher) authority over the employee. When no tangible employment
> action is taken, a defending employer may raise an affirmative defense to liability or
> damages, subject to proof by a preponderance of the evidence, *see* Fed. Rule Civ.
> Proc. 8(c). The defense comprises two necessary elements: (a) that the employer
> exercised reasonable care to prevent and correct promptly any sexually harassing
> behavior, and (b) that the plaintiff employee unreasonably failed to take advantage
> of any preventive or corrective opportunities provided by the employer or to avoid
> harm otherwise. While proof that an employer had promulgated an antiharassment
> policy with complaint procedure is not necessary in every instance as a matter of law,
> the need for a stated policy suitable to the employment circumstances may
> appropriately be addressed in any case when litigating the first element of the
> defense. And while proof that an employee failed to fulfill the corresponding
> obligation of reasonable care to avoid harm is not limited to showing an unreasonable
> failure to use any complaint procedure provided by the employer, a demonstration of
> such failure will normally suffice to satisfy the employer's burden under the second

element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Faragher*, 524 U.S. at 807-08; *see also Burlington*, 524 U.S. at 762-763.

Therefore, applying the appropriate standard for harassment by a supervisor, it is not enough for Defendant to show that it had no knowledge of the alleged conduct where the alleged harassment was perpetrated by a supervisor who was involved in the decision to terminate Plaintiff's employment. *See Mikels v. City of Durham, N.C.*, 183 F.3d 323, 332 (4th Cir. 1999) ("Any harassing conduct that culminates in a 'tangible employment action' against the victim is necessarily conduct 'aided by the agency relation,' since it can only be taken by supervisory employees empowered by their employers to take such action. In that circumstance, vicarious liability is absolute, without regard to whether the employer knew, or should have known, or approved of the act, or sought to prevent or stop it.") (internal citations omitted); *see also Todd v. Fed. Express Corp.*, No. 4:09-CV-1501-TLW-KDW, 2012 WL 4006466, at *2 (D.S.C. Sept. 12, 2012) (concluding that conduct was imputable to defendant where plaintiff's supervisor was the person who engaged in the sexually harassing behavior and was involved in the decision to terminate plaintiff's employment and informed plaintiff of the decision). Accordingly, there is sufficient evidence that Allison's alleged conduct is imputable to Defendant.

## 2. Claim is Time-Barred

Defendant next contends that Plaintiff's sexual harassment claim is time-barred, because the subject conduct occurred prior to the 180 days preceding the filing of Plaintiff's March 5, 2009 EEOC charge. Plaintiff did not specifically respond to this argument. However, as explained above, the court must review the motion and the materials before it to determine if the moving party is

13

entitled to summary judgment as a matter of law. *See Meyer*, 388 F. Supp. 2d at 634.

"Under Title VII . . ., a plaintiff typically has 180 days following the alleged unlawful employment practice to file an EEOC charge." *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 538 (E.D.N.C. 2008) (citations omitted). "The statutory filing period is extended to 300 days in a deferral state if the plaintiff 'initially instituted proceedings with a [designated Fair Employment Practices ('FEP') ] State or local agency.'" *Id.* (citations and footnote omitted). "[I]f the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." *Id.* (citations omitted). Notwithstanding this general rule, "a court sometimes may consider events beyond the 180-day charge-filing period when analyzing a hostile work environment claim." *See McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 427 F. Supp. 2d 595, 616 (E.D.N.C. 2006) (citation omitted). "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Plaintiff filed her first EEOC charge on May 14, 2008, in which she alleged, among other things, that she was discriminated against on the basis of her sex.[5] Plaintiff later filed a second

---

[5] Plaintiff asserted in her deposition that she filed an EEOC charge in 2007, Huggins Dep. 63:10-11, but there is no documentary evidence in the record, such as a copy of the charge or a right to sue letter based on the charge, to support her assertion. Plaintiff also asserted in her deposition that she filed a complaint with the North Carolina Department of Administration, Huggins Dep. 52:8-14; Def.'s Ex. 22 [115-5], and filed a Petition for a Contested Case Hearing with the North Carolina State Office of Administrative Hearings on May 2, 2008, Pl.'s Ex. 4 [DE-120-1] at 39. However, Plaintiff has made no allegation that the North Carolina State Office of Administrative Hearings actually had jurisdiction over her charge or otherwise argued that the appropriate statutory period is 300 days as opposed to 180 days. *See Bratcher*, 545 F. Supp. 2d at 543(concluding that "in the overwhelming number of cases, it is accurate to describe North Carolina as a non-deferral state with a 180–day filing period," except in two circumstances, one of which being "when the North Carolina State Office of Administrative Hearings actually has subject matter jurisdiction over a charge that an employee of the State of North Carolina files.") (citations omitted). Accordingly, despite some apparent ambiguity regarding the proper statutory period, where Plaintiff has not raised the issue, the 180-day statutory period will be utilized for purposes of determining whether Plaintiff's claim is time-barred.

14

Case 5:10-cv-00414-FL Document 124 Filed 08/08/13 Page 14 of 32

EEOC charge on March 5, 2009, in which she also alleged discrimination based on her sex. On July 6, 2010, the EEOC issued right to sue letters as to both of Plaintiff's charges. [DE-1-5]. Defendant suggests that any conduct prior to 180 days preceding the March 5, 2009 EEOC charge is time-barred. However, this ignores Plaintiff's earlier filed EEOC charge of May 14, 2008. Therefore, it appears that any allegations of harassment prior to the 180 days preceding either the May 14, 2008 charge, which would be November 16, 2007, or the March 5, 2009 charge, which would be September 17, 2008, may not be considered, unless Plaintiff can show that an act of harassment contributing to the hostile environment took place within the filing period. *See Morgan*, 536 U.S. at 117.

Plaintiff specifically noted, in her response to Defendant's motion for summary judgment, two instances of sexual harassment by Allison: the first occurring in May 2006, when Allison allegedly asked Plaintiff inappropriate questions regarding her need for a mammogram and commented on her breasts; and the second occurring on November 2, 2007, when Allison allegedly rubbed his body against Plaintiff, touching her breasts, during a meeting. Both of these alleged occurrences predate the 180 day-window preceding the filing of Plaintiff's EEOC charges. Additionally, while Plaintiff has asserted that she was touched on numerous other occasions by Allison, Plaintiff has provided no details as to when these other alleged harassments occurred and, thus, has failed to show that they were within the 180 day-period preceding either EEOC charge. Accordingly, Plaintiff's EEOC charge with respect to her sexual harassment claim is untimely,[6] and

---

[6] It is noteworthy that Plaintiff alleged in her complaint that Allison made two harassing phone calls to her home on July 23, 2008. See Compl. ¶ 9, Huggins Dep. 171:22-173:9. While it is arguable that these alleged calls were an act of harassment contributing to the hostile work environment, the calls were made after the filing of Plaintiff's first EEOC charge and outside the 180-day period preceding Plaintiff's second EEOC charge. *See Morgan*, 536 U.S. at 117 (concluding that the entire time period of the hostile environment may be considered by a court for the purposes of determining liability "[p]rovided that an act contributing to the claim occurs within the filing period . . . .").

15

it is recommended that Defendant be granted summary judgment on this claim.

### 3. Conduct Sufficiently Severe or Pervasive

Finally, assuming Plaintiff's claim is not time-barred, Defendant contends in its reply that the alleged conduct is not sufficiently severe or pervasive to alter the terms and conditions of employment. Title VII is violated "[w]hen the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ocheltree*, 335 F.3d at 331 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A plaintiff must establish that the work environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (citing *Harris*, 510 U.S. at 21-22). Among the circumstances examined are the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 21.

Here, Plaintiff alleged that Allison questioned her inappropriately about a mammogram procedure and commented on her breasts in May 2006; rubbed the front of his body up against the front of her body, making contact with her breasts, during a November 2, 2007 meeting and on numerous other occasions; and made two harassing phone calls to her home on July 23, 2008. This conduct is not sufficiently severe or pervasive to alter the terms and conditions of employment.

First, the comments allegedly made by Allison on May 2006 and the two phone calls allegedly made by Allison on July 23, 2008, while unquestionably inappropriate if proven, are isolated in nature. *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) ("A

16

handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.") (citation omitted).

Next, Plaintiff's assertion that Allison rubbed the front of his body up against the front of her body, making contact with her breasts, during a November 2, 2007 meeting and on numerous other occasions is belied by the fact that this allegation is absent from Plaintiff's EEOC charges, complaint, and the numerous letters she wrote to a variety of government officials regarding alleged harassment and discrimination. There is no evidence, beyond Plaintiff's own self-serving assertions, that Plaintiff ever reported any physical contact by Allison prior to the filing of this case, despite making a series of complaints regarding other far less lascivious aspects of Allison's conduct. In fact, her testimony that she reported the physical contact by Allison and that her complaints are documented in the record, Huggins Dep. 204:18-24, is contradicted by the record itself, which is devoid of any such reports. *See* Oct. 8, 2012 Letter from Pl.'s Counsel to Def.'s Counsel [DE-121-1] ("After looking through the documents produced in discovery, as well as looking through my file, I am not in possession of any letters which specifically state that Ms. Huggins was the victim of sexual harassment, nor have I ever been in possession of said documents.").

Moreover, the allegation that Allison rubbed against Plaintiff on numerous occasions is insufficient to create a genuine question of fact where Plaintiff has provided no context or detail regarding the circumstances surrounding these alleged numerous incidents. The Fourth Circuit has held that "'conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment,' *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir.1998), and that allegations '[un]substantiated by accounts of specific dates, times or circumstances,' are too 'general' to suffice, *Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir.1994)." *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 676

17

(4th Cir. 2011). The only specific incident of physical contact Plaintiff recounts is during a November 2, 2007 meeting, and the contact appears incidental in nature or is, at best, ambiguous as to Allison's intent. *Id.* 202:5-204:21, 258:20-260:15.

These three isolated incidents that occurred over a three year period, when taken as a whole and in light of the circumstances presented, are not objectively hostile or abusive, when viewed from the perspective of a reasonable person in Plaintiff's position. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"). Further, to the extent Plaintiff contends that the lowered evaluations, written warnings, and disagreements over work assignments created a hostile work environment, her claim likewise fails. *See Carroll v. N.C. Dep't of Health & Human Servs.*, No. 4:00-CV-159-H(4), 2001 WL 34013436, at *4 (E.D.N.C. July 17, 2001) (finding that occurrences between employees and management interacting during the course of their employment, such as downgraded evaluations and complaints regarding work projects, were not sufficiently severe or pervasive). Accordingly, the conduct alleged by Plaintiff is not sufficiently severe or pervasive to alter the terms and conditions of employment. Therefore, Plaintiff has failed to state a *prima facie* case of hostile work environment based on sexual harassment, and Defendant is entitled to summary judgment on this claim.

In sum, Plaintiff's sexual harassment claim is time-barred and, alternatively, Plaintiff has filed to establish a *prima facie* case for sexual harassment. Therefore, having found no genuine issue of material fact, it is recommended that Defendant be granted summary judgment as a matter of law on this claim.

18

## B. Religious Discrimination

To establish a Title VII claim for religious discrimination, Plaintiff must demonstrate that Defendant treated her differently than other employees because of her religious beliefs. *See Adams*, 640 F.3d at 558 (citing *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1017 (4th Cir. 1996)). Where, as here, there is no direct evidence of religious discrimination, Plaintiff can rely on the *McDonnell Douglas* framework. "To satisfy her burden and establish a prima facie case of religious discrimination under Title VII, [plaintiff] must prove (1) that she engaged in a religious practice, (2) that the employer discharged her or took other adverse employment action against her, and (3) that the employer's action was motivated at least in part by her religious practice." *Chalmers*, 101 F.3d at 1025.

Plaintiff alleges that she is a Jehovah's Witness, that Allison is a Missionary Baptist Minister, and that Allison treated her differently than other employees, based on her religion. In her deposition, Plaintiff identified three occasions on which she suffered religious discrimination based on Allison's denial of her vacation requests to attend religious conventions: August 2006, July 2007, and August 2008. Huggins Dep. 131:20-132:12. When asked if there was any other way Allison discriminated against her based on her religion, Plaintiff responded, "No."[7] *Id.* 188:10-17. Defendant contends that Plaintiff's claim is time-barred and, alternatively, that Defendant has proffered a non-discriminatory reason for its actions, which Plaintiff has failed to demonstrate is

---

[7] In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff attempts to make a broader argument, that she was disciplined with written warnings, a suspension, and ultimately terminated for her religious beliefs. Pl.'s Mem. at 25-26. This is in direct conflict with Plaintiff's deposition testimony in which she unambiguously states that the denial of her vacation requests were the only acts of religious discrimination. Huggins Dep. 188:10-17. Furthermore, Plaintiff cites as evidence of this broader religious discrimination certain statements within Plaintiff's Rule 26(a)(2) Expert Disclosures [DE-120-3]. Plaintiff's forecast of the expert's opinion, in and of itself, is not evidence, and Plaintiff has not provided any direct testimony from this expert, such as an expert report or affidavit. Accordingly, the information contained in Plaintiff's expert disclosures will not be considered.

19

pretext.

## 1. Claim is Time-Barred

Defendant contends that Plaintiff's claim is time barred because the allegedly discriminatory acts of which she complains occurred prior to 180 days preceding the filing of her March 5, 2009 EEOC charge. Def.'s Mem. at 22-23. Plaintiff responds that the continuing violations doctrine applies and that all of Plaintiff's allegations of discriminatory acts should be considered, not just those within the statutory time frame. Pl.'s Resp. at 13-14.

The continuing violations doctrine applies to hostile work environment claims, which by "their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. In *Morgan*, the Supreme Court made clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. While these prior acts may be used as "background evidence in support of a timely claim," they may not serve as the basis for a claim of discrimination. *Id.* Accordingly, the continuing violations doctrine does not apply to Plaintiff's religious discrimination claim, which is based on discrete acts of discrimination, and each alleged act will be considered to determine whether it falls outside of the statutory period.

Plaintiff filed her first EEOC charge on May 14, 2008, and later filed a second EEOC charge on March 5, 2009. Therefore, it appears that any allegations of harassment outside of the 180 days preceding either the May 14, 2008 charge, which would be November 16, 2007, or the March 5, 2009 charge, which would be September 17, 2008, are time-barred.[8] The alleged August 2006 and July 2007 denials of Plaintiff's vacation requests occurred more than 180 days prior to the filing of her May 14, 2008 EEOC charge. Accordingly, those acts may not form the basis of her religious

---

[8] *See supra* note 5 for discussion regarding the statutory filing period.

discrimination claim. *See Morgan*, 36 U.S. at 113. Furthermore, the alleged August 2008 denial of Plaintiff's vacation request occurred after the filing of the May 14, 2008 EEOC charge and outside the 180 days preceding the filing of her second EEOC charge. Accordingly, Plaintiff's EEOC charges are untimely with respect to her religious discrimination claim, and it is recommended that Defendant be granted summary judgment on this claim.

## 2. Prima Facie Case/Nondiscriminatory Reason/Pretext

Defendant, alternatively, contends that even if Plaintiff's claim is not time-barred, Defendant is entitled to summary judgment on Plaintiff's religious discrimination claim, because Plaintiff's leave was, in fact, approved for August 2006 and August 2008, and Defendant has proffered a legitimate, nondiscriminatory reason for denying Plaintiff's leave for July 2007. Def.'s Mem. at 17-20. Plaintiff responds that Defendant's proffered reason is pretext. There appears to be no dispute that Plaintiff engaged in a religious practice and has, thus, established the first element of her *prima facie* case. Pl.'s Resp. at 24-27.

Defendant argues that there is no evidence that Allison denied Plaintiff's leave requests in August 2006 and August 2008, and points out that Allison granted her leave request to attend Jehovah's Witness conventions on June 30, 2006, and from July 7 through July 17, 2006. *See* Mar. 8, 2006 E-mail from Allison to Pl. [DE-113-4]. The evidence of record indicates that Plaintiff requested leave in August 2006 to attend Jehovah's Witness conventions in Tennessee in November and December 2006. Huggins Dep. 132:10-134:22. Plaintiff testified that Allison told her leave during holidays should be reserved for people who celebrate holidays and that Jehovah's Witnesses do not, so he was holding that time open for others. *Id.* 133:13-20. However, Plaintiff's leave request was, in fact, approved on November 16, 2006, *see* Nov. 16, 2006 Email from Allison to Pl.

[DE-115-5] at 3, and while Plaintiff claims that she requested the time off in advance to reduce the cost of travel accommodations, she does not assert that Allison's delay in approving her leave prevented her from attending the conventions, Huggins Dep. 132:10-134:22. *See Chalmers*, 101 F.3d at 1025. Accordingly, Plaintiff has failed to establish an adverse employment action related to her August 2006 leave request.

With respect to the July 2007 leave request, Defendant does not appear to contest that it was, in fact, denied and documentary evidence so supports. *See* June 20, 2007 E-mail from Allison to Pl. [DE-115-5] at 4. Plaintiff also testified that Allison knew she was requesting leave to attend a Jehovah's Witness convention, because she was required to tell him why she was requesting leave. Huggins Dep. 132:17-133:5. However, there is no evidence to support that the denial was motivated at least in part by Plaintiff's religious practice. Plaintiff requested leave for July 13 and 16, 2007, and the only evidence in the record as to why the request was denied–aside from Plaintiff's supposition that it was based on her religion–are emails from Allison stating that she did not timely submit her request and that she was needed to assist with office relocation. *See* June 20, 2007 E-mail from Allison to Pl.; July 12, 2007 E-mail from Allison to Pl. [DE-115-5] at 5. Moreover, Allison's alleged comments regarding reserving holiday vacation time for those who observe holidays would not be applicable to this time frame.

Finally, Defendant presented uncontroverted evidence that Allison granted Plaintiff's leave requests to attend Jehovah's Witness conventions on other occasions. *See* Mar. 8, 2006 E-mail from Allison to Pl.; Nov. 16, 2006 E-mail from Allison to Pl. Allison also granted Plaintiff's leave request for August 2007 at the same time he denied her July request due to the office move, which undermines any inference that the reason is pretext. *See* June 20, 2007 E-mail from Allison to Pl.

22

While Plaintiff testified that other employees were given time off during July 2007, she also testified that she did not know when they requested leave and failed to present evidence contradicting Allison's statement that those employees requested leave well in advance of Plaintiff and that had Plaintiff requested leave earlier it would have been granted. *See* July 12, 2007 E-mail from Allison to Pl.; Huggins Dep. 138:1-10. Accordingly, Plaintiff has failed to show, by preponderance of the evidence, that the denial of her July 2007 leave request was motivated in part by religious discrimination and Defendant has proffered a nondiscriminatory, legitimate reason for the denial, which Plaintiff has failed to demonstrate is pretext.

With respect to her August 2008 leave request, Plaintiff testified that it was denied by Allison. Huggins Dep. 131:20-25. Defendant has presented no definitive evidence that Plaintiff's request was granted. However, Plaintiff has provided no details whatsoever regarding the circumstances of this leave request that would suggest that the alleged denial was motivated at least in part by her religious practice. While plaintiff's burden in establishing a *prima facie* case is not an onerous one, it requires proof by a preponderance of the evidence. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515 (4th Cir. 2006). Therefore, while Plaintiff's testimony that her leave was denied is sufficient to establish an adverse employment action for the purpose of her *prima facie* case, she has failed to establish that it was motivated at least in part by her religious practice and, thus, the August 2008 leave request cannot form the basis for her religious discrimination claim.

In sum, Plaintiff's religious discrimination claim is time-barred and, alternatively, Plaintiff has failed to state a *prima facie* case of religious discrimination, Defendant has proffered a nondiscriminatory, legitimate reason for denying Plaintiff's leave request, and Plaintiff has failed to demonstrate that Defendant's reason is pretext for religious discrimination. Accordingly, having

found no genuine issue of material fact, it is recommended that Defendant be granted summary judgment as a matter of law on this claim.

## C. Retaliation

To establish a *prima facie* case of retaliation under Title VII, "a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 410 (4th Cir. 2013) (quoting *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405–06 (4th Cir. 2005)). If the plaintiff makes out a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Lettieri*, 478 F.3d at 646, 651 (citation omitted). Ultimately, the plaintiff can avoid summary judgment by demonstrating that the defendant's proffered reason is pretext, which requires proof that the "but-for" cause of the employment action was retaliation. *See id.*; *Univ. of Texas Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S. Ct. 2517, 2533 (2013) (holding that Title VII retaliation claims must be proved according to the traditional principles of "but-for" causation, as opposed to the less rigorous "motivating factor" standard set forth in 42 U.S.C. § 2000e-2(m), which applies to status-based discrimination claims).

Plaintiff alleges that after she began filing complaints of discrimination and harassment, she was retaliated against with negative performance evaluations, denial of leave requests, written warnings, suspension, investigatory leave, and ultimately termination. Compl. ¶ 9; Pl.'s Resp. at 14-24. Defendant contends that many of the complained of acts occurred outside the 180-day statutory period preceding the filing of Plaintiff's March 5, 2009 EEOC charge for retaliation and are, therefore, time-barred. Def.'s Mem. at 22-23. Alternatively, Defendant argues that Plaintiff has

24

failed to state a *prima facie* case for retaliation. *Id.* at 20-22.

## 1. Claims are Time-Barred

Defendant specifically contends that the denial of leave requests, performance evaluations, written warnings, and suspension cannot serve as a basis for Plaintiff's retaliation claim because they occurred prior to 180 days preceding the filing of her March 5, 2009 EEOC charge for retaliation. Plaintiff responds that the continuing violations doctrine applies and that all of Plaintiff's allegations of discriminatory acts should be considered, not just those within the statutory time frame.

As discussed above, *see supra* Section III.B.1, the continuing violations doctrine applies to hostile work environment claims involving repeated conduct and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113, 115. Because Plaintiff's retaliation claim is based on discrete acts, the continuing violations doctrine does not apply, and each alleged act will be considered to determine whether it falls outside the statutory period.

Plaintiff alleged retaliation in both her EEOC charges of May 14, 2008 and March 5, 2009; thus any act occurring outside of the 180 days preceding either the May 14, 2008 charge, which would be November 16, 2007, or the March 5, 2009 charge, which would be September 17, 2008, may not form the basis for Plaintiff's retaliation claim.[9]  As discussed above, Plaintiff did not file her EEOC complaint within 180 days of the denial of her leave requests in August 2006, July 2007, and August 2008. Accordingly, these denials of leave cannot form the basis of Plaintiff's retaliation claim. Plaintiff also alleges that she was given negative feedback and lowered performance evaluations on August 25, 2006 and June 15, 2007, that she received written warnings April 20, 2007

---

[9] *See supra* note 5 for discussion regarding the statutory filing period.

and July 27, 2007, and that she was suspended on April 20, 2007. Each of these events occurred more than 180 days prior to the filing of Plaintiff's May 14, 2008 EEOC charge and, thus, cannot form the basis of her retaliation claim. Therefore, the only actions occurring within the 180-day statutory period are the investigatory leave and termination.

### 2. Prima Facie Case

Alternatively, Defendant contends Plaintiff cannot make out a *prima facie* case of retaliation because many of the complained of acts are not adverse employment actions or there is no causal link between the protected activity and the adverse employment action. There appears to be no dispute that Plaintiff engaged in protected activity, thus satisfying the first element of her *prima facie* case.

#### i. Adverse Employment Action

"An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks and citations omitted). As discussed above, *see supra* Section III.B.2, Plaintiff was not, in fact, denied leave in August 2006; thus, Plaintiff did not suffer an adverse employment action. Neither can the negative performance evaluations be said to constitute adverse employment actions. In the context of performance evaluations,

'[a] downgrade . . . *could* effect a term, condition, or benefit of employment' if it has a tangible effect on the terms or conditions of employment. However, a poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. An evaluation merely causing a loss of prestige or status is not actionable.

*James*, 368 F.3d at 377 (internal citations and quotation marks omitted). Here, Plaintiff has presented no evidence that the terms or conditions of her employment were impacted in any way by

26

the performance evaluations. Furthermore, in cases such as this one where, despite being lowered, Plaintiff's overall evaluations remain positive, there is no adverse employment action. *See Whitaker v. Nash Cnty.*, No. 5:11-CV-15-FL, 2012 WL 3840375, at \*10 (E.D.N.C. Sept. 5, 2012), *aff'd*, 504 F. App'x 237 (4th Cir. 2013) (citations omitted). Likewise, Plaintiff has presented no evidence that the written warnings had a tangible effect on the terms or conditions of her employment. Finally, Plaintiff's suspension was overturned and did not affect a term or condition of her employment; thus, no adverse employment action actually resulted. *See Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002) (concluding that disciplinary actions that were reversed or rescinded did not constitute adverse employment actions) (citing *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995)).

## ii. Causal Connection

Left are the denial of Plaintiff's July 2007 leave request, her placement on investigatory leave, and her termination. Defendant contends that Plaintiff has failed to establish a causal connection between Plaintiff's protected activity and these allegedly retaliatory acts.

### a. July 2007 Leave

As discussed above with respect to Plaintiff's religious discrimination claim, *see supra* Section III.B.2, Plaintiff failed to provide evidence–aside from her own supposition–that the July 2007 leave request was motivated even in part by religious discrimination. Here, in the context of retaliation, Plaintiff argues that the temporal proximity between the protected activity and employment action is sufficient to establish the requisite causal link. "Generally speaking, temporal evidence alone cannot establish causation for a prima facie case of retaliation, unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment

27

action' was 'very close.'" *Shields v. Fed. Exp. Corp.*, No. 03-2103, 120 F. App'x 956, 963 (4th Cir. 2005) (citation omitted). Plaintiff asserts that she mailed a complaint to Human Resources concerning Allison on June 12, 2007, and that she made her vacation request on June 19, 2007, for time off in July and August. *See* June 12, 2007 Letter; June 20, 2007 Email from Allison to Pl. On June 20, 2007, Allison denied her July request and granted her August request. While the temporal proximity here is "very close," Plaintiff has not alleged that Allison was aware of the protected activity at the time he denied her request, which is required to establish a causal link. *See id.* at 962 (citation omitted). Accordingly, Plaintiff has not stated a *prima facie* case of retaliation based on the denial of her July 2007 leave request.

Furthermore, even assuming Plaintiff established a *prima facie* case, Defendant has asserted a legitimate, nondiscriminatory reason for the adverse employment action, which Plaintiff failed to demonstrate was pretext. *See supra* Section III.B.2. In the context of a retaliation claim, Plaintiff must meet the enhanced burden of proving "but-for" causation, which she has likewise failed to do for the same reasons previously stated. *See Nassar*, 133 S. Ct. at 2533 (holding that to prevail on a Title VII retaliation claim a plaintiff must prove "but-for" causation, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). Therefore, Plaintiff has failed to establish that denial of her July 2007 leave request was unlawful retaliation.

### b. Investigatory Leave and Termination

Plaintiff was placed on investigatory leave with pay on December 19, 2008, after she exhibited what Allison characterized as "an increased pattern of irrational and harassing behaviors," allegedly becoming confrontational with her co-workers and culminating in Plaintiff telling Boulden,

28

"Don't be an a[]hole" and referring to him as a "freaking moron" in his presence. *See* Dec. 19, 2008 Mem. [DE-120-2]. Plaintiff allegedly declined to discuss the matter with Allison and was referred for an Employee Assistance Program assessment, which revealed no justification to excuse Plaintiff's conduct. *See* Jan. 29. 2009 Letter. After further investigation, on January 29, 2009, Plaintiff was notified that her employment would be terminated on January 30, 2009, for "unacceptable personal conduct, specifically conduct unbecoming a State employee that is detrimental to State service, insubordination, and conduct for which no reasonable person should expect to receive prior warning." *Id.*

Plaintiff first relies on temporal proximity to establish a causal link between her protected activity and being placed on investigatory leave in December 2008 and terminated in January 2009. Prior to being placed on investigatory leave, Plaintiff filed a grievance on March 18, 2008, with Human Resources against Allison for discrimination. *See* March 18, 2008 Letter [DE-120-1] at 36-38. Plaintiff also filed a complaint with the Office of Administrative Hearings on May 2, 2008 [DE-120-1] at 39, and an EEOC charge on May 14, 2008.[10] A seven- to ten-month gap in time is insufficient to establish a causal link based on temporal proximity. *See Shields*, 120 F. App'x at 963 (finding four-month gap between protected activity and adverse employment action was insufficient to establish causal link).

Plaintiff also generally asserts that she had no performance issues prior to working for Allison and that, after she filed her first grievance against Allison on August 25, 2006, she was

---

[10] Plaintiff wrote a letter dated January 4, 2009, to then Governor Beverly Perdue and the State Ethics Commission regarding being placed on investigatory leave. *See* Jan. 4, 2009 Letter [DE-120-1] at 48-50. However, this letter was written after the she was placed on investigative leave and there is no evidence that Allison was aware of the letter when her notice of termination was issued on January 29, 2009. Therefore, this letter is insufficient to establish a close temporal proximity between the protected action and adverse employment discrimination.

subjected to a pattern of retaliatory conduct. However, Plaintiff fails to recognize that her prior supervisor noted performance issues on her reviews that were consistent with those Allison raised. For example, Brooks noted on Plaintiff's June 2004 review, in which her performance ranged from "Very Good" to "Outstanding," that Plaintiff should be conscious about being away from her desk, that more teamwork was needed between Plaintiff and her co-workers regarding phone coverage, and that Plaintiff should take care in sending emails that could be construed as unprofessional. *See* June 22, 2004 Eval. In April 2005, Brooks rated Plaintiff's performance as "Very Good," and again noted that Plaintiff should limit her absences from her desk and "strive to maintain a positive outlook, even when she encounters difficult situations." Apr. 14, 2005 Eval. [DE-113-1] at 79.

In August 2006, Allison rated Plaintiff's performance from "Good" to "Outstanding" and overall as "Very Good," noting that her teamwork needs improvement and that she "needs to learn when to speak and to whom she should register her complaints." Aug. 25, 2006 Eval. at 81-88. Plaintiff's view of Allison's evaluation as negative is unreasonable, as the lowest rating she received was "Good" and her overall rating was "Very Good." Likewise, what Plaintiff construes as a negative and retaliatory comment regarding teamwork, is consistent with comments made in a prior review by Brooks. Plaintiff's 2007 evaluation by Allison was similar in awarding her a "Very Good" rating overall, but lowered her teamwork evaluation to "Below Good," noting that Plaintiff "performs extremely well when she does not allow negative issues to dictate her behavior." June 14, 2007 Eval. Again, Allison's evaluation is overall quite positive and the constructive criticism is fully consistent with the prior review by Brooks; however, Plaintiff refused to sign the evaluation. June 18, 2007 Letter [DE-113-1] at 101.

Plaintiff asserts that she received a negative interim evaluation for the period from April 1,

30

2007 to March 31, 2008, in which she received "Below Good" in all categories. Huggins Dep. 67:7-12. However, in Plaintiff's final performance evaluation for that period, Allison rated Plaintiff's performance overall as "Very Good" and noted that she showed signs of improvement as the work cycle ended. *See* May 30, 2008 Eval. [DE-113-1] at 102-108. Likewise, an October 19, 2006 written counseling letter involving Plaintiff sending "unnecessary and disrespectful emails regarding Agency Procedure," Oct. 19, 2006 Counseling Mem., is reminiscent of conduct noted in a 2004 evaluation by Brooks that Plaintiff should take care in sending emails that could be construed as unprofessional. *See* June 22, 2004 Eval. Plaintiff's performance evaluations and written warnings do not evidence a pattern of retaliatory conduct on the part of Allison. To the contrary, her evaluations are quite positive overall and any criticism appears constructive and consistent with that of Plaintiff's previous supervisor. Accordingly, Plaintiff has failed to show a causal link between her protected activity and being placed on investigatory leave and subsequently terminated.[11]

Having found no causal link between the alleged adverse employment actions and protected activity, Plaintiff has failed to establish, by a preponderance of the evidence, a *prima facie* case of retaliation. Furthermore, even assuming Plaintiff had established a *prima facie* case, her scant evidence with respect to causation would fall far short of proving, by a preponderance of the evidence, that retaliation was the "but-for" cause of her being placed on investigatory leave and subsequently terminated. *See Nassar*, 133 S. Ct. at 2533.

In sum, the alleged retaliatory acts complained of by Plaintiff are either time-barred or she has failed to establish a *prima facie* case of discrimination. Accordingly, having found no genuine

---

[11] It is noted that Plaintiff relies on statements found in her Rule 26(a)(2) Expert Disclosures as evidence of retaliation. However, as noted above, *see supra* note 7, the expert disclosures merely forecast what Plaintiff contends her expert will testify to and do not constitute evidence.

issue of material fact, it is recommended that Defendant be granted summary judgment as a matter of law on Plaintiff's retaliation claim.

## IV. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Defendant's motion for summary judgment be ALLOWED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the district court.

Submitted, this __7__ day of August 2013.

Robert B. Jones, Jr.
United States Magistrate Judge