IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-414-FL

| | |
|---|---|
| LINDA K HUGGINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| N.C. DEPT. of ADMINISTRATION, N.C. ) | |
| HUMAN RELATIONS COMMISSION, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on defendant's motion for summary judgment (DE 112). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R") wherein it is recommended that the court grant defendant's motion. Plaintiff filed objections to the M&R, to which defendant responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, and grants defendant's motion for summary judgment.

**STATEMENT OF THE CASE**

On October 7, 2010, plaintiff, proceeding *pro se*, filed complaint against defendant, the North Carolina Department of Administration Human Relations Commission ("defendant" or "HRC"), alleging discrimination based on race, sex, religion, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff had filed charges with the Equal Employment Opportunity Commission ("EEOC") on May 14, 2008, and March 5, 2009, and received a right to sue letter from the EEOC regarding both charges on July 9, 2010.

On November 5, 2010, defendant filed a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure for insufficient service of process and failure to state a claim upon which relief can be granted. On November 29, 2010, plaintiff filed a motion for leave to amend her complaint to add several individual defendants, as well as claims for discrimination in violation of North Carolina state law, claims for emotional distress, and a request for punitive damages.

By order entered September 2, 2011, the court denied plaintiff's motion to amend, and granted in part and denied in part defendant's motion to dismiss, dismissing plaintiff's claim for discrimination based on race. Plaintiff subsequently retained counsel, who entered notice of appearance on June 15, 2012, and July 10, 2012.

On January 18, 2013, defendant filed the instant motion for summary judgment. Defendant argues that plaintiff has failed to establish her claims for discrimination and retaliation and further contends that plaintiff's sexual harassment and religious discrimination claims are time-barred, as well as many of the events supporting her retaliation claims. The court referred the motion for M&R on May 7, 2013. M&R was entered on August 8, 2012, recommending that defendant's motion for summary judgment be granted (DE 124). Plaintiff, through her attorney, timely filed objections to the M&R (DE 126) to which defendant responded (DE 128). Thereafter, plaintiff filed a *pro se* motion for leave to file additional objections out of time and proposed objections (DE 129, 130). The following day, one of plaintiff's attorneys filed motion to withdraw (DE 131). By order entered September 6, 2013, the court granted plaintiff's motion for leave to file additional objections out of time, and the motion to withdraw.

**STATEMENT OF FACTS**

Where neither party objects to the discussion of the facts contained in the M&R, and the

court adopts the same, and recites them below.

Plaintiff was employed by the HRC from May 2004, until she was terminated on January 30, 2009. Plaintiff initially reported directly to interim director Sherri Brooks ("Brooks") until May 2005, when George Allison became the director of the HRC. Dep. of George Allison ("Allison Dep.")[1] 14:19-24; Dep. of Linda Huggins ("Huggins Dep.")[2] 49:22-24. Thereafter, Plaintiff reported directly to Allison. Huggins Dep. at 49:17-19. Plaintiff provided administrative support for the HRC staff, the public, and other entities, which included maintaining a database, preparing 30-day letters, and receptionist duties such as greeting visitors and answering the telephone. *Id.* 34:16-24. Other HRC employees, including Valerie Branch ("Branch"), were required to provide back-up to Plaintiff and answer the phone when Plaintiff was away from her desk, which was the source of some conflict, as Plaintiff believed Branch did not to do so. *Id.*

Plaintiff received interim and annual performance evaluations, first from Brooks and then from Allison. *See* Pl.'s Evals. [DE-113-1] at 71-111. Plaintiff's evaluations from Brooks were largely positive with some constructive criticism. *See* June 22, 2004 Eval. [DE-131-1] at 71-77. Plaintiff's first two evaluations from Allison in 2006 and 2007 were also largely positive. *See* Aug. 25, 2006 Eval. [DE-131-1] at 81-88; June 14, 2007 Eval. [DE-131-1] at 91-99. Plaintiff's November 2007 interim evaluation from Allison rated her performance as "Below Good," but Plaintiff's annual evaluation from Allison for that period was increased to "Very Good" after Plaintiff showed improvement. *See* Huggins Dep. 67:7-12; May 30, 2008 Eval. [DE-113-1] at 102-108. Plaintiff requested written explanations regarding the negative comments in her evaluations from Allison, which she did not receive. Huggins Dep. 152: 18-154:14; Sept. 11, 2006 Letter from Pl. to Allison [DE-117-5] at 13.

In May 2006, Plaintiff requested leave from Allison for a doctor's appointment. Huggins Dep. 53:23-25, 59:13-22. Plaintiff was required to explain to Allison why she was requesting leave, while other employees did not have to explain their reasons for requesting leave. *Id.* 55:22-56:11. Plaintiff claims that she informed Allison she had a doctor's appointment and that he asked her inappropriate questions regarding the scope of the appointment, including questioning her need for a mammogram and commenting on the appearance of her breasts. *Id.* 53:18-54:20. Plaintiff thereafter, sometime between May 2006 and August 25, 2006, filed her first

---

[1] Excerpts from the deposition of George Allison can be found at Docket Entry numbers 113-2, 117 to 117-6, and 118-118-3.

[2] Excerpts from the deposition of Linda Huggins can be found at Docket Entry numbers 113-1 and 114 to 116-5.

3

of multiple complaints against Allison. *Id.* 52:8-53:1,75:3-8. *See also* Allison Dep. 26:8-20. Plaintiff also wrote numerous letters complaining of Allison to government officials, including then Governors Beverly Purdue and Mike Easley, President Barack Obama, and Senators Richard Burr and Kay Hagan. *See* Huggins Dep. 146:23-147:13, 150:12-151:12, 163:19-164:9; Pl.'s Ex. 4 [120-1]. Plaintiff also filed a complaint against Richard Boulden ("Boulden"), HRC General Counsel, for taking a cooler mug from her desk. Huggins Dep. 84:15-85:23. Plaintiff alleged that Boulden was stalking her at work by lurking around her desk at the direction of Allison, but she did not file a complaint regarding the alleged stalking. *Id.*

On October 10, 2006, Allison sent an email to Plaintiff regarding her interactions with coworkers with respect to 30-day letters.[3] *See* Oct. 10, 2006 Email from Allison to Pl. [DE-113-1] at 120. On October 19, 2006, Plaintiff received a written counseling letter for sending challenging, unnecessary, and disrespectful e-mails regarding agency procedure pertaining to sending 30-day letters to clients. *See* Oct. 19, 2006 Counseling Mem. [DE-113-1] at 112.

Plaintiff requested use of her vacation time to attend Jehovah's Witness conventions on several occasions. Allison Dep. 69:18-70:1. On March 8, 2006, Huggins requested days off in March, June, and July of the same year, specifically to attend Jehovah's Witness conventions in June and July, and her request was granted. *See* Mar. 8, 2006 Email from Allison to Pl. [DE-113-4]. In August 2006, Huggins requested vacation time off during November and December of the same year to attend a Jehovah's Witness convention with her family in Tennessee. Huggins Dep. 133:24-134:3. Plaintiff claims that Allison told her vacation requests during the holidays should be reserved for people who celebrate the holidays, that Jehovah's Witnesses do not, and that he was going to reserve those vacation days for employees he knew celebrated the holidays. *Id.* 133:14-134:22. Millie Hershner ("Hershner"), a former HRC attorney, recalled Plaintiff being concerned about Allison's alleged comments regarding Jehovah's Witnesses and holidays, but Hershner was not aware of any other allegedly discriminatory acts at HRC. *See* Dep. of Mildred Hershner ("Hershner Dep.") [DE-118-4] 25:1-23. Allison ultimately granted Plaintiff's request for leave, three days before the requested period of leave, which created a financial hardship for Huggins in making travel arrangements. Huggins Dep. 134:7-22.

---

[3] Plaintiff was required to prepare what were known as "30-day letters," which were sent to parties in housing discrimination cases. *See* Allison Dep. 29:12-22. In order to prepare the letters, Plaintiff relied on information provided by housing investigators at HRC. Once Plaintiff received this information, she prepared the letters and submitted them, no later than the twentieth of the month, for review by Maggie Faulcon, a housing supervisor. Huggins Dep. 79:15-18, 92:21-25.

4

In June 2007, Plaintiff requested time off to attend a Jehovah's Witness convention on July 13 and 16, August 3, and August 15 through 17, 2007. *See* June 20, 2007 E-mail from Allison to Pl. [DE-115-5] at 4. Allison denied the request with respect to the July dates, citing the need for staff attendance due to the fact that HRC was relocating its office, and approved the request with respect to the August dates. *Id.* When Plaintiff questioned why other employees were allowed to take time off in July, Allison responded that they had submitted requests timely, and that Plaintiff had not. *See* July 12, 2007 E-mail from Allison to Pl. [DE-115-5] at 5. Plaintiff also requested leave to attend a Jehovah's Witness convention in August 2008, which she claims was denied by Allison. Huggins Dep. 131:20-25.

On May 30, 2007, Plaintiff received a written warning for unacceptable personal conduct regarding her extended absence from the office April 20, 2007, without permission and proper notice. *Id.* 78:8-14. Plaintiff had mechanical problems with her car, and informed Branch (in person) and Boulden (by leaving a note) that she was leaving, *id.* 79:19-23, and attempted to inform Allison by leaving a voice mail, *id.* 80:24-81:2. Plaintiff stated she would be back shortly and returned one hour and a half to one hour and forty-five minutes later. *Id.* 80:20-81:5. Plaintiff was initially suspended by Boulden in relation to this incident, but the suspension was reversed and she lost no pay. *Id.* 190:21-191:8. Plaintiff claims the suspension was in retaliation for filing a complaint against Boulden with Allison. *Id.* 86:15-87:19.

On June 12, 2007, Plaintiff filed a written complaint with Human Resources against Allison. *See* June 12, 2007 Letter [DE-120-1] at 1-3. Plaintiff received two written warnings on July 27, 2007. *Id.* 90:15-17, 97:1-4. The first warning was based on unsatisfactory job performance in relation to 30-day letters Plaintiff sent to clients on behalf of HRC, *see* July 27, 2007 Written Warning [DE-113-1] at 117, and the second warning was for Plaintiff returning twenty minutes late to her desk after her lunch break, thereby leaving the phones and reception area unattended during a time when HRC committee members were arriving, *see* July 27, 2007 Written Warning [DE-113-1] at 118. Huggins notified her backup co-workers by email that she went to lunch late and would return from lunch late due to having to wait with an office visitor during the first minutes of her lunch break. Huggins Dep. 98:12-99:6.

On November 2, 2007, at the conclusion of a meeting between Plaintiff and Allison, Plaintiff claimed that Allison closed the door and blocked the exit, badgered her, and then assigned her a significant amount of work, which she considered to be a form of harassment. *See* Pl.'s May 14, 2008 EEOC Charge [DE-115-5] at 16-18. Plaintiff later claimed that during this meeting, and on numerous other occasions, Allison rubbed the front of his body against hers, touching her breasts. Huggins Dep. 258:20-261:10. On December 3, 2007, Plaintiff complained about Allison to Britt Cobb ("Cobb"), Secretary of the NCDOA, and on December 20, 2007, Plaintiff sent letters to then Governor Easley and Cobb regarding Allison's conduct; the letters did not reference any physical contact, although Plaintiff contends it was reported. *See*

5

Dec. 7, 2007 Letter to Cobb [DE-117-5] at 27-28; Dec. 20, 2007 Letter to Easley [DE-113-1] at 127-28; Dec. 20, 2007 Letter to Cobb [DE- 113-1] at 129.

On March 18, 2008, Plaintiff mailed a written complaint regarding Allison to Human Resources. *See* Mar. 18, 2008 Letter [DE-120-1] at 36-38. On May 14, 2008, Plaintiff filed an EEOC charge alleging retaliation and discrimination on the basis of sex and religion based on the conduct of Allison. *See* May 14, 2008 EEOC Charge [DE-113-1] at 130. Also in May 2008, Plaintiff filed a complaint for discrimination on the basis of religion and sex with the Office of Administrative Hearings. *See* May 2008 Petition for Hr'g [DE-120-1] at 39. On July 23, 2008, Plaintiff filed a police report alleging that she received threatening phone calls at her home and that she believed the calls were made by Allison. *See* Police Report [DE-113-1] at 133; Huggins Dep. 171:22-172:5.

On December 19, 2008, Plaintiff was placed on investigatory leave, after she exhibited what Allison characterized as "an increased pattern of irrational and harassing behaviors," allegedly becoming confrontational with her co-workers and culminating in Plaintiff telling Boulden, "Don't be an a[]hole" and referring to him as a "freaking moron" in his presence. *See* Dec. 19, 2008 Mem. [DE-120-2]. Plaintiff now denies the conduct, but declined to discuss the matter with Allison at the time and was referred for an Employee Assistance Program assessment, which revealed no justification to excuse Plaintiffs conduct. *See* Huggins Dep. 182:14-29; Jan. 29, 2009 Letter [DE-115-5] at 20-22. After further investigation, on January 29, 2009, Plaintiff was notified that her employment would be terminated on January 30, 2009, for "unacceptable personal conduct, specifically conduct unbecoming a State employee that is detrimental to State service, insubordination, and conduct for which no reasonable person should expect to receive prior warning." Jan. 29, 2009 Letter. On March 5, 2009, Plaintiff filed a second EEOC charge alleging retaliation and discrimination on the basis of religion and sex. [DE-18-1]. On July 9, 2010, Plaintiff received a right to sue letter from the EEOC regarding both her EEOC charges. [DE-1-5].

## COURT'S DISCUSSION

A. Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specificobjections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687

6

F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.   Analysis

Plaintiff has filed two sets of objections: one through counsel, and one *pro se*. The court considers these in turn, first discussing plaintiff's objections filed through counsel, then taking up her later-filed *pro se* objections.

    1.   Plaintiff's objections through counsel

        a.   Sexual Harassment and Religious Discrimination

Plaintiff's first two objections are (1) to the recommendation that the court grant summary judgment to defendant on plaintiff's sexual harassment claim, and (2) to the recommendation that the court grant summary judgment to defendant on plaintiff's religious discrimination claims. Both objections are far from specific. Plaintiff merely states that: "[a]t this time, Plaintiff has no additional information to present to the Court other than the information previously submitted to the Court in [her response in opposition to summary judgment]." Pl.'s Obj. to M&R, DE 126 at 2-3. Despite the absence of a specific objection, the court has reviewed both recommendation *de novo*. The court overrules these objections where, as set forth in the thoughtful and thorough M&R, even assuming that plaintiff's claims are not time-barred, plaintiff has failed to establish a *prima*

7

*facie* case for sexual harassment or religious discrimination.[4]

    b.   Unlawful Retaliation

  Plaintiff next objects to the recommendation in the M&R that the court grant summary judgment to defendant on plaintiff's claim for retaliation. "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). If a plaintiff establishes such a *prima facie* case, " the burden shifts to the defendant, who is obliged to articulate a legitimate, non-retaliatory justification for the adverse employment action." Id. at 405. "If the defendant carries this burden, the onus is on the plaintiff to then demonstrate that the non-retaliatory reason advanced by the defendant is a mere pretext." Id.

  Plaintiff first contends that the analysis in the M&R is flawed because it did not consider plaintiff's termination to be an adverse employment action. This is not the case. It was specifically noted in the M&R that plaintiff's investigatory leave and termination were adverse actions. See M&R 28-31.

  Plaintiff next asserts that, contrary to the recommended finding in the M&R, she has made

---

[4] It is alternatively recommended in the M&R that the court find these claims to be time-barred where plaintiff did not file her EEOC charges within 180 days of the alleged unlawful employment practices in this claims, as is typically required. See 42 U.S.C. § 2000e-5(e)(1); Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 624, (2007) superseded by statute on other grounds ("[I]f the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." (citations omitted)). As noted in the M&R, under certain circumstances the statutory period for filing is not 180, but 300 days, and there was some ambiguity regarding the statutory period applicable in this case. Because plaintiff had not argued nor alleged that the 300 day period was appropriate, the 180 day statutory period was utilized in the M&R. In her supplemental *pro se* objections (discussed below), however, plaintiff appears to contend she had 300, rather than 180, days to file her EEOC charge where she sought relief from various state agencies. Where the court agrees with the recommendations in the M&R that plaintiff has failed to state a *prima facie* case for sexual harassment and religious discrimination even if her claims are not time-barred, the court need not here reach the issue of the appropriate statutory filing period.

8

a *prima facie* showing of a causal link between engagement in protected activity and her termination, an adverse employment action. In support of this assertion, plaintiff argues, first, that the temporal proximity between her engagement in protected activities and her termination alone establishes a causal connection. Generally, "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" are not "sufficient evidence of causality to establish a prima facie case . . . [unless] the temporal proximity [is] very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, (2001) (per curiam) (quotations omitted). The Supreme Court did not establish a boundary of what constitutes "very close" in Clark County, but it did cite as examples of insufficient proximity two cases where adverse action taken three months, and four months, respectively, after the protected activity. See id. at 273-74 (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (7th Cir. 1992)).[5]

In this case, seven months elapsed between plaintiff's filing of her May 14, 2008, EEOC charge and her termination. Accordingly, temporal proximity alone is not sufficient evidence of causality. See Shields v. Fed Exp. Corp., 120 F. App'x 956, 963 (4th Cir. 2005) (concluding that due to passage of three to four months between plaintiff's protected activity and the adverse employment action, there was insufficient temporal proximity to establish *prima facie* causal link between the two); cf. King v. Rumsfeld, 328 F.3d 145, 151 n. 5 (4th Cir. 2003) (ten week gap

---

[5] In arguing that she has established a *prima facie* causal connection based on proximity alone, plaintiff relies on McNairn v. Sullivan, 929 F.2d 974 (4th Cir 1991), and Karpel v. Inova Health System Services, 134 F.3d 1222 (4th Cir. 1998). In McNairn, the Fourth Circuit held that plaintiff had established a prima facie causal link where her termination and her filing an EEOC charge where the charge was filed eight months prior to her termination. 929 F.2d at 977, 980. In Karpel, the court held that plaintiff made her prima facie case where she was transferred to another unit three months after filing an EEOC complaint, and terminated ten months after filing the complaint. 134 F.3d at 1229. Both of these cases, however, were decided before Clark County, where such gaps of time were noted as presenting insufficient temporal proximity.

9

between protected activity and termination significantly weakened the inference of causation, but did not undercut that inference enough to render plaintiff's *prima facie* case unsuccessful where the termination occurred at a natural decision point).

Plaintiff also argues that prior events serve as evidence that her termination was retaliatory. Events occurring outside of the statutory limitations period are not themselves actionable but may be used as "background evidence in support of a timely claim." Morgan, 536 U.S. at 113. In this case, these prior events do not establish causation.

Plaintiff first filed a complaint about Allison on or about August 25, 2006, after receiving her August 25, 2006, performance evaluation. Allison Dep. 23-24. Thereafter, plaintiff, claims she was the victim of retaliatory performance evaluations reflecting poor ratings, as well as written warnings. Pl.'s Obj. to M&R DE 126 at 8 (citing Allison Dep. 53). A review of the record shows the opposite. Her evaluations do not reflect poor ratings. Plaintiff's June 14, 2007, annual performance evaluation, similar to all of her previous evaluations, also awarded her an overall evaluation of "very good." June 14, 2007 Eval., DE-113-1 at 99. Similarly, although her interim evaluation did reflect a rating of "below good," Nov. 29, 2007, Interim Eval., DE 113-1 at 109,[6] her final performance review for the period returned her overall performance rating to "very good," noting improvement as the work cycle ended. May 30, 2008, Eval., DE 113-1 at 108.

Moreover, as observed in the M&R, the critical comments made by Allison in plaintiff's evaluations are similar to those made by Brooks, her former supervisor. Compare, June 22, 2004, Eval., DE 113-1 at 76, 79 (stating that Brooks would like to see more teamwork between plaintiff

---

[6] Plaintiff asserts that this negative interim evaluation was the next evaluation she received after sending Allison a letter on September 11, 2006, requesting that he provider her with written explanations of comments on her August 25, 2006 evaluation. However, her June 14, 2007, evaluation – rating plaintiff's overall performance as "very good" – would have come between September 11, 2006, and her November 29, 2007 interim evaluation.

10

an the intake specialist, that Brooks spoke with plaintiff about sending e-mails that could be construed as unprofessional, and that plaintiff should limit her absence from her desk, and encouraging her to maintain a positive outlook when she encounters difficult situations), with Aug. 25, 2006, Eval., DE 113-1 at 85 (noting that plaintiff's teamwork needs improvement, that her tone in communicating is appropriate most of the time, and stating that plaintiff needs to learn to whom she should register her complaints), and June 14, 2007 Eval., DE-113-1 at 99 ("[Plaintiff] performs extremely well when she does not allow negative issues to dictate her behavior."). Plaintiff also notes receipt of three written warnings shortly before and after her positive June 14, 2007 evaluation. See DE 113-1 at 113-115, 117-118. However, taken together with her positive performance evaluations, and the similarities of the constructive criticism given by Allison to that of Brooks, the record does not show a pattern of retaliatory conduct, and plaintiff's objection is overruled.[7]

---

[7] In her objections filed through counsel, plaintiff did not contest the applicability 180 day statutory filing period and accordingly based her retaliation claim only in her termination where other actions would be time-barred. While no objection before the court squarely raises the issue, the court notes that assuming, without deciding, that the 300 days filing period applies, summary judgment for defendant on plaintiff's retaliation claim would still be appropriate.

Applying the 300 day filing period, any acts occurring before July 19, 2007 – 300 days before plaintiff's May 14, 2008, charge – cannot for the basis for her retaliation claim. The August 2006 and June 2007 denials of plaintiff's request for leave in November and December 2006, and July 2007, respectively, both fall outside the 300 day filing period as well as the 180 day period and cannot support plaintiff's claim. Also time-barred are plaintiff's overturned April 20, 2007, suspension, and her May 30, 2007, written warning.

Plaintiff's performance reviews remained positive and therefore were also not materially adverse actions. Whitaker v. Nash Cnty., No 5:11CV-15-FL, 2012 WL 3840375, at *10 (E.D.N.C. Sept. 5, 2012), aff'd, 504 F. App'x 237 (4th Cir. 2013); see also (for purposes of a retaliation an action is an adverse employment action if it is "materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

Finally, assuming that plaintiff has established a *prima facie* case that the July 27, 2007, written warnings were retaliatory, defendant has produced evidence that these warnings were given for "legitimate, non-retaliatory" reasons, Navy Fed. Credit Union, 424 F.3d at 405, noting that they reflected continued problems plaintiff had at work. The first letter was second for plaintiff mis-mailing 30-day letters. July 27, 2007 Written Warning, DE-113-1 at 117. The second was for an absence from her desk. July 27, 2007 Written Warning, DE-113-1 at 118. Plaintiff had previously been noted to have issues with being away from her desk. See June 22, 2004, Eval., DE 113-1 at 79 ("I have suggested that [plaintiff] . . . limit her absence from the reception area."). An issue with the 30-day letters was also otherwise noted.

2. Plaintiff's supplemental *pro se* objections

Plaintiff's supplemental *pro se* objections appear to raise four issues. First she objects to the recommendation that defendant be granted summary judgment on her sexual harassment claim because she has not established a *prima facie* case. Second, she similarly objects to the recommendation that defendant be granted summary judgment on her religious discrimination claim because she has not established a *prima facie* case. Third, she renews her earlier denied motion to amend her complaint. Fourth, she contends that the statutory filing period applied in the M&R is improper where it should have been 300, not 180, days.

a. Sexual Harassment

To establish her claim for sexual harassment, plaintiff must show the offending conduct "(1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003). "Title VII does not establish a general civility code for the American workplace." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (quotations omitted). "[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788.

---

See May 30, 2008, Eval., DE 113-1 at 108 ("Particular attention is need when preparing and mailing "30" day letters to avoid miscommunication with clients."). Thus plaintiff has the burden of proving the proffered reasons for the letters are pretext. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Plaintiff has neither asserted, nor presented evidence, that the proffered reasons for the written warnings are pretext. Plaintiff only contends that reasons given for her termination were pretexual.

12

Plaintiff argues that Allison touched and harassed her on numerous occasions,[8] but provides no dates, times, or circumstances to substantiate most of these claims. Such general "assertions, standing alone, are insufficient to sustain an actionable Title VII claim." Gilliam v. S. Carolina Dep't Of Juvenile Justice, 474 F.3d 134, 143 (4th Cir. 2007); see also E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 676 (4th Cir. 2011) ("[A]llegations unsubstantiated by accounts of specific dates, times or circumstances, are too general [to support a claim for harassment]."). The conduct specifically alleged by plaintiff is that (1) Allison questioned plaintiff about a doctor's appointment including a mammogram and commented on her breasts in May 2006; (2) Allison rubbed up against the front of her body during a November 2, 2007 meeting;[9] and (3) Allison made two harassing phone calls to her home on July 23, 2008. These isolated incidents, occurring over a three year span, do not meet the "high bar" that "plaintiffs must clear . . . in order to satisfy the severe or pervasive test," E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). Accordingly this objection is overruled.

      b.      Religious discrimination

Plaintiff next objects to the recommendation that defendant be granted summary judgment on her religious discrimination claim. In order to establish a *prima facie* case of religious discrimination, a plaintiff must show (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) she was performing her job in a satisfactory manner; and (4) similarly situated employees outside of the protected class received more favorable treatment.

---

[8] Plaintiff also appears to attempt to assert claims for negligent hiring and failure to train against defendant with respect to its employment of Allison. Such claims were not pleaded and will not be considered by the court at this juncture. See Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

[9] As noted in the M&R, the contact appears to possibly have been incidental in nature. Huggins Dep. 202-204, 258-260.

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). If a plaintiff establishes a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). "This burden, however, is a burden of production, not persuasion." Id. If the employer meets its burden, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotations omitted).

Plaintiff claims she denied leave to attend religions functions because she is a Jehovah's Witness. Specifically, plaintiff asserts Allison denied her leave to attend religious conventions in November 2006 and December 2006, July 2007, and August 2008. Huggins Dep. 131-134.[10] Plaintiff further argues there was "an overall atmosphere of resentment [toward] Jehovah['s] Witnesses" claiming that her property was stolen or hidden by others and Allison did nothing. Finally plaintiff asserts that Allison would inspect her work computer, but not other employees' work computers.

Despite plaintiff's wide-ranging argument, her religious discrimination claim is limited to denial of leave where she testified at deposition that such denials were the only way in which she was discriminated against based on religion. Huggins Dep. 188. A party cannot create a genuine issue of material fact simply by contradicting its past deposition testimony. See Erwin v. United States, 591 F.3d 313, 325 n. 7 (4th Cir. 2010) ("[I]t is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct."); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th

---

[10] Plaintiff refers to her request for leave in November and December 2006 as her "August 2006" request as that is when plaintiff requested the leave.

Cir. 1999) (noting that a party cannot create a triable issue "simply by contradicting deposition testimony with a subsequent affidavit"). Similarly, plaintiff cannot create a genuine question of fact as to religious discrimination by now arguing that she was discriminated against in multiple ways where she previously testified that the only acts of religious discrimination were denials of her leave requests.

With respect to plaintiff's November and December 2006 leave request, the record shows that in August 2006, plaintiff requested periods of leave in November and December 2006 to attend Jehovah's Witness functions with her family in Tennessee. Huggins Dep. 132-134. Although plaintiff asserts that this leave request was initially denied by Allison, he later granted her leave requests. Id. at 134; Nov. 16, 2006, E-mail from Allison to Pl. DE 115-5 at 3. Thus plaintiff's August 2006 request was not denied, and does not constitute an adverse employment action.

Unlike her August 2006 request, plaintiff's request for leave to attend a Jehovah's Witness function in July 2007 was denied. June 20, 2007, E-mail from Allison to Pl. DE 115-5 at 4. Plaintiff cannot, however, show that similarly situated non-Jehovah's Witness employees received more favorable treatment. The evidence of record shows that plaintiff's leave was denied because her office was relocating to another building during that time. Id. While other employees were allowed leave during this time, it was because they had requested leave before the moving date was confirmed. July 12, 2007, E-mail from Allison to Pl. DE 115-5 at 5. Thus where plaintiff has not shown that any employees who asked for leave after the move date was confirmed, she has failed to establish her *prima facie* case.

Alternatively, even if plaintiff has established a *prima facie* case with respect to her July 2007 move request, defendant has produced evidence that Allison's denial was motivated by the

15

need for staff to be present during the relocation process. June 20, 2007 E-mail from Allison to Pl. DE 115-5 at 4. Thus, the burden is on plaintiff to show this reason is pretexual, and plaintiff has presented no evidence to that effect.

Finally, with respect to plaintiff's August 2008 leave request, plaintiff has presented no evidence whatsoever of the circumstances surrounding the denial of her leave.[11] There is no evidence of events indicating that denial of this leave request was motivated by religious discrimination, or that similarly situated employees received more favorable treatment. Therefore this alleged denial of plaintiff's leave request cannot support her religious discrimination claim.

   c.  Plaintiff's amended complaint

Plaintiff's next objection is not to the M&R, but rather protests this court's denial of her motion to amend her complaint. Plaintiff's argument is based on her reading of South Carolina case-law regarding the South Carolina rules of Civil Procedure. Procedure in federal court, however, is governed by the Federal Rules of Civil Procedure. Accordingly, plaintiff's reliance on other law is misplaced. Moreover, plaintiff's arguments address the time plaintiff had serve process. This court did not deny plaintiff's motion to amend due to any defect in service of process, rather the court denied plaintiff's motion to amend for futility. See Huggins v. N.C. Dep't of Admin., No. 5:10-CV-414-FL, 2011 WL 3917372 at *9 (E.D.N.C. Sept. 2. 2011). As plaintiff's objection is to an order of this court made two years ago and is based on inapplicable law, it is overruled.

   d.  The proper statutory period plaintiff had to file EEOC charges.

Plaintiff's next objection confuses issues relating to the time to amend her complaint, the

---

[11] Indeed, the court notes that while the record reflects e-mails regarding the 2006 and 2007 leave requests discussed above, there is no documentary evidence regarding the August 2008 leave request, despite plaintiff's assertion at her deposition that she had e-mails reflecting this denial of her leave, and that she had provided those e-mails to opposing counsel. Huggins Dep. 132.

16

time serve process on defendant, the time plaintiff had to file a charge of discrimination with the EEOC after an alleged unlawful employment practice, and other issues. Within this objection however, plaintiff asserts that North Carolina is a "deferral state" and maintains the proper time for filing her charge is 300 days.

Plaintiff makes this assertion regarding the 300 day filing period in the context of arguing that her motion to amend her complaint was improperly denied. However, "a document filed *pro se* is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Accordingly, the court construes plaintiff's objection as arguing that she properly had 300 days under section 2000e-5(e) to file an EEOC charge. The court, however, need not address this issue because it has found that plaintiff has failed to established a *prima facie* case for sexual harassment, or religious discrimination even were her claims not time-barred, and that defendant would be entitled to summary judgment on plaintiff's retaliation claim even assuming a 300 day limitations period. Thus, this objection is moot.

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objection has been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the recommendation of the magistrate judge, and GRANTS defendant's motion for summary judgment. The clerk is DIRECTED to close this case.

SO ORDERED, this the 13th day of September, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge